THE PEOPLE OF THE STATE OF NEW YORK ex rel. THE CITY OF NEW YORK, Appellant, *v.* NEW YORK RAILWAYS COMPANY et al., Respondents.

New York (city of) — fee of streets acquired by city held in trust for people of state and not as municipal property — railroads having right of way through streets — when city authorities may not compel railroad company to change location of tracks in street.

1. The fee of the streets acquired by the city of New York is held by it in trust for the use of all the people of the state and not as corporate or municipal property. The construction and operation of a railroad upon a street is not within the control of the municipal authorities but is the exercise of an exclusive interest in or appropriation of the street, and its authorization of it is one of the prerogatives of sovereignty and derivable only through the action of the legislature.

2. When a railroad has been constructed and operated for a long period of time the courts will presume that the assent thereto required by law was given. (L. 1850, ch. 140, § 28, subd. 5.) That assent, so far as appears in this case, did not reserve to the city the power to withdraw or cancel it or impose as a condition the right to the city to direct a relocation of the tracks. Neither the General Railroad Law, nor the charter of the city, nor other statute empowers the city to recall the assent. Having been accepted and acted upon by the railroad, henceforth it is binding on the city.

3. The city is not vested with the governmental or police power to compel a street railroad company to change its track so located to another place upon a street upon the ground of public safety and convenience.

*People ex rel. City of New York* v. *N. Y. Railways Co.*, 171 App. Div. —, affirmed.

(Argued January 6, 1916; decided February 29, 1916.)

APPEAL from an order of the Appellate Division of the Supreme Court in the first judicial department, entered November 12, 1915, which affirmed an order of Special Term denying a motion for an alternative writ of mandamus to compel the defendants to relocate certain street railway tracks.

The facts, so far as material, are stated in the opinion.

*Lamar Hardy, Corporation Counsel* (*Samuel J. Rosensohn* and *William Goldsticker* of counsel), for appellant. The city of New York has been vested with the power to protect the life and property of those using the highway and may compel the respondents to so relocate their tracks on Central Park West as not to interfere with the ordinary use of that public highway. (*City of Buffalo* v. *Stevenson*, 207 N. Y. 258; *N. O. Gas Light Co.* v. *Drainage Comm.*, 197 U. S. 445; Elliott on Roads & Streets [3d ed.], § 549; *People* v. *Buffalo Fish Co.*, 154 N. Y. 93; *B. E. R. R. Co.* v. *City of Brooklyn*, 2 App. Div. 98; *Matter of Deering*, 93 N. Y. 361; *C., B. & Q. R. R. Co.* v. *Chicago*, 166 U. S. 226; *N. P. Ry. Co.* v. *Duluth*, 208 U. S. 583; *A. C. L. R. R. Co.* v. *City of Goldsboro*, 232 U. S. 548; *People* v. *W. S. & C. L. T. Co.*, 112 App. Div. 581.)

*Henry J. Smith* and *James L. Quackenbush* for respondent New York Railways Company. The public authorities of the city of New York have no power to compel the change of location of tracks on Central Park West in the absence of authority delegated by the legislature.

312    People ex rel. City of New York *v.* N. Y. R. Co.

[217 N. Y.]              Opinion, per Collin, J.                    [Feb.,

(*Potter* v. *Collis*, 156 N. Y. 15; *People ex rel. City of Olean* v. *W. N. Y. & P. T. Co.*, 214 N. Y. 526; *N. Y. C. & H. R. R. R. Co.* v. *City of New York*, 142 App. Div. 578; 202 N. Y. 212.) The franchise of the Eighth Avenue Railroad Company was granted by the state free from conditions of revocation, destruction or impairment by the city. (*Beekman* v. *Third Avenue R. R. Co.*, 153 N. Y. 152; *Potter* v. *Collis*, 156 N. Y. 10.)

*Michel Kirtland* for respondent Eighth Avenue Railroad Company. The motion of relator for an alternative writ of mandamus upon the grounds stated in petition was properly denied, and the order made herein should be affirmed. (*Potter* v. *Collis*, 156 N. Y. 16; *People ex rel. City of Olean* v. *W. N. Y. & P. T. Co.*, 214 N. Y. 526.)

Collin, J. The city of New York cannot establish its right to compel the defendants to relocate their tracks upon Eighth avenue by invoking the provisions of the resolution of the common council of July, 1851, and the contract between the city and Pettigrew and his associates. (*Potter* v. *Collis*, 156 N. Y. 16.) Moreover, the stipulation of the contract urged by the appellant as obligating the defendants to change the location of the track, as directed by the city, provided, if valid, for the cessation and not a change in the use of the street by the promisors. The question remaining for our determination is: Has the appellant been vested with the governmental or police power to compel the defendants to change the track from its present to another place upon the street or avenue upon the ground of public safety and convenience?

The assertion and argument of the appellant that the power in question was bestowed by the ancient charters of the city and has devolved to it need not detain us. Neither their language or intent nor the contemporaneous conditions support the assertion. The Consolidation Act

(Laws of 1882, ch. 410) empowered the common council to make ordinances, not inconsistent with law and the Constitution of the state, to regulate the use of the streets by foot passengers, animals, vehicles, cars and locomotives. (§ 86, subd. 2.) Inasmuch as the resolution adopted by the board of aldermen directing the relocation of the track was not an ordinance (Greater New York Charter, §§ 38, 39), we need not determine whether or not such provision was repealed by the Greater New York charter or extended to the consolidated city. (See Charter, § 1610.) We turn, therefore, to the other legislative enactments put forward by the appellant as delegating to and vesting in it the power it is attempting to exercise. Of those enactments, we need to consider only the following, because it is manifest that the power, if existent, is granted by one or both of such provisions. The charter provides: "Subject to the constitution and laws of the state, the board of aldermen shall have power to regulate the use of streets and sidewalks by foot passengers, animals or vehicles;   *   *   *   wherever the word 'vehicle' or the plural thereof occurs in this section it shall be deemed to include wagons, trucks, carts, cabs, carriages, stages, omnibuses, motors, automobiles, locomobiles, locomotives, bicycles, tricycles, sleighs or other conveyances for persons of property." (§ 50.) By virtue of special and general enactments, power is given the board of aldermen to protect persons and preserve the safety and welfare of the people within the city. (Charter, § 43; General City Law [Cons. Laws, ch. 21], § 20, subd. 13.)

The respondent asserts that our decision in *People ex rel. City of Olean* v. *Western New York & Penn. Traction Co.* (214 N. Y. 526) determines that the power claimed by the appellant here does not exist. The appellant earnestly urges that the assertion is erroneous for the two reasons: (a) The power conferred upon the respective cities was not identical, and (b) in the *Olean* case the power was invoked to improve the street; in the instant

314   People ex rel. City of New York *v.* N. Y. R. Co.

[217 N. Y.]          Opinion, per Collin, J.          [Feb.,

case, to protect the public. We have, therefore, considered the facts and questions as presented by the record here.

The respondent New York Railways Company is the lessee of the respondent Eighth Avenue Railroad Company. The latter company was incorporated in 1855 under the General Railroad Law (Laws of 1850, chapter 140) and chapter 140 of the Laws of 1854. The part of Eighth avenue involved in this proceeding, that is, from Fifty-ninth street to One Hundred and Tenth street, was within the route of the railroad to be built and operated by the company as fixed in the incorporating certificate. The certificate did not fix the locations of the railroad tracks upon the streets of the route. The company succeeded an association of individuals and to the railroad upon that part of the route designated in the certificate from Barclay street to Fifty-fourth street, which they had constructed under a void contract between themselves and the city. (*Potter* v. *Collis*, 156 N. Y. 16.) By virtue of section 3 of chapter 140 of the Laws of 1854, the company was authorized to construct, complete and use the railroad in the streets and avenues designated in the respective grants, licenses, resolutions or contracts under which it had been in part constructed, irrespective of the consents required by sections 1 and 2 of the act. In 1874, and after the railroad authorized by the incorporating certificate had been constructed, the legislature passed an act (Laws of 1874, chap. 478) requiring the company to " extend its existing railroad tracks from their present terminus in the Eighth avenue * * * through and along the said avenue northerly " to Macomb's Dam bridge. Section 2 of the act provided: " When the extension required by this act shall be completed and put in operation, said company shall use, maintain and operate its railroad during the term for which said company was incorporated upon and along the several streets and avenues in the city of New York upon and over which its railroad is now in use and operation and upon and over such extension, sub-

ject only to the provisions of the general railroad act of
this state with its amendments, which shall be applicable
to the railroad and extension hereby granted, except as
herein provided." In 1913 the appellant, by its board of
estimate and apportionment (Charter, § 242), caused the
roadway and sidewalks of Eighth avenue, at the point in
question, to be changed in plan and construction, and in
1915, through its board of aldermen, demanded, upon the
ground of public safety and convenience, that the com-
pany relocate one of its tracks. This proceeding is to
compel compliance with the direction. We decide that
the direction is *ultra vires* of the appellant.

A railroad can be constructed and operated upon a pub-
lic street or highway only upon the consent of the people
acting through the legislature. The title to the streets
and highways, whether in the people or a municipality,
or in fee or in easement, is held for the public use. The
fee of the streets acquired by the city of New York is held
by it in trust for the use of all the people of the state and
not as corporate or municipal property. The power of
the legislature in respect to them is qualified by the Con-
stitution alone. For ordinary and general transportation
and traffic, the streets and highways are free and com-
mon to all citizens. Thus much is conclusively implied
in their acquisition and maintenance, and their regula-
tion for such purpose is, speaking generally, imposed
upon the local municipal authorities. The construction
and operation of a railroad upon a street is not within
that purpose. It is the occupation of a part of the street
with privately-owned permanent structures, the operat-
ing of cars and the transportation of persons thereon for
fares or tolls. It is the use of the street for a distinct
and exclusive purpose. It is the exercise of an exclusive
interest in or appropriation of the street. The authoriza-
tion of it is one of the prerogatives of sovereignty and
derivable only through the action of the legislature.
(*Potter* v. *Collis,* 156 N. Y. 16; *Wager* v. *Troy Union*

*Railroad Co.;* 25 N. Y. 526; *Matter of Rapid Transit R. R. Comrs.,* 197 N. Y. 81; *Davis* v. *Mayor, etc., of N. Y.,* 14 N. Y. 506; *Del., L. & W. R. R. Co.* v. *City of Buffalo,* 158 N. Y. 266.) The legislature may, unless forbidden by the Constitution, delegate to a municipality, or an agent for such purpose, the power to authorize it, but the delegation must be in clear and unmistakable language. It does not exist through avoidable implication. Authority to regulate the use of the streets will not constitute it. (*Davis* v. *Mayor, etc., of N. Y.,* 14 N. Y. 506, 517; *Beekman* v. *Third Ave. R. R. Co.,* 153 id. 144; *Water, Light & Gas Co. of Hutchinson* v. *City of Hutchinson,* 207 U. S. 385; *Lincoln S. D. Co.* v. *City of New York,* 210 N. Y. 34, 39.) In the *Davis* case the city of New York had power to regulate the streets. It was said: "But this power relates to and is confined to streets, lanes, &c., as such. Everything which is fairly within the idea of regulating, * * * the streets, with a view to their uses and purposes as streets, may be exercised by the corporation, but the converting of a street or a part of a street into a new piece of machinery for transporting persons with which the existence of a street has no natural or necessary connection, is not, in my judgment, at all within the purview of the charter and acts of the legislature to which I have referred. * * * I have examined with respectful attention the several cases in which the power which I have been examining is claimed to have been expressly or impliedly affirmed. They are, without exception, cases in which the right to establish the railroad at the places where it was proposed to be constructed had been granted, mediately or immediately, by the legislature." In the *Lincoln Safe Deposit Company* case, Chief Judge CULLEN said: "A power to regulate and control public streets is not a power to alienate the title to any part of the street." Under established principles and the authorities, the construction and operation of a railroad upon a

street is an appropriation or alienation of the part of it
so occupied for a purpose extraordinary and distinct from
highway purposes and can be authorized by municipal
authorities only through a clear right given by the
legislature.   The authorization to regulate the use of
the streets does not contain or confer the right; it does
not empower the authorities of the city of New York
to locate upon the streets the route or the tracks of
a railroad or to participate in any way in creating,
defining or controlling the franchise granted by the
state.   In so far as it is concerned, the practical loca-
tion of railroad tracks upon the streets, and the parts of
the streets to be appropriated in their use is a matter
between the state and the railroad corporation.   By virtue
of the implied legislative intention, the tracks of the
Eighth Avenue Railroad Company were to be located, in
the absence of a specific location by the corporate charter,
with a proper regard to the public convenience and
safety, but a violation of this implied obligation could be
corrected by the state and not by the municipality.   The
state might under the police power require relocation.
(*People ex rel. City of Olean* v. *Western N. Y. & P.
Traction Co.*, 214 N. Y. 526; *New Orleans Gas Light
Co.* v. *Drainage Comm. of New Orleans*, 197 U. S. 453.)
Equally true is it, and for identical reasons, that the
authority to the board of aldermen to regulate the use of
the streets does not empower it to appropriate to the occu-
pation and use by the respondents, by a relocation of the
track in question, a part of the street other than that upon
which their tracks have been lawfully constructed.   It
does delegate to it police power enabling it to reasonably
control in divers ways the care of the railroad structures
upon the streets and the operation of the cars upon them.
The judicial decisions uphold many instances of such con-
trol.   The rights of a railroad corporation upon the parts
of the streets appropriated to its use must be so exercised
that the free use of the streets, for the purposes and in

the modes inherent in their creation, will not be unreasonably interfered with.    It is a part of the regulative power of the local authorities to secure such result.

Another fact requires consideration.   The General Railroad Law provided that nothing contained in it should be construed to authorize " the construction of any railroad not already located in, upon or across any streets in any city, without the assent of the corporation of such city." (L. 1850, ch. 140, § 28, subd. 5.)   Therefore, the right of the Eighth Avenue Railroad Company to exercise the franchise was not perfect until the city had assented to the construction.   The power to direct the relocation of the track cannot, however, be found in the statutory necessity for the assent of the city.   The assent was not a part of the franchise.   It was but a step in the grant by the state of a single, indivisible franchise.   (*City of New York* v. *Bryan,* 196 N. Y. 158.)   The city might attach to its assent conditions which were not destructive of the franchise or repugnant to constitutional or statutory provisions relating to it.   (*People ex rel. City of Olean* v. *Western N. Y. & P. Traction Co.,* 214 N. Y. 526; *People ex rel. West Side St. R. Co.* v. *Barnard,* 110 N. Y. 548.) The record does not disclose to us the form or substance of the assent.   When a railroad has been constructed and operated for a long period of time the courts will presume that an assent required by law was given.   We must conclusively presume, in the absence of allegation and proof, that the tracks of the company were lawfully placed and have lawfully remained in their present location.   The grounds upon which the proceeding rests and the arguments of the appellant assume the existence of such fact.   The assent did not reserve to the city the power to withdraw or cancel it or impose as a condition the right to the city to direct a relocation of the tracks. Neither the General Railroad Law, nor the charter of the city, nor other statute empowers the city to recall the assent or enacts that it shall be continuous.   It having

been given, the purpose of the statute was fulfilled. The company accepted and acted upon it and henceforth it was binding upon the city. Under the statute making the exercise of the franchise dependent upon it, the city could not relocate the tracks in order that they should be where they desired. (*Matter of Kings County Elevated R. R. Co.*, 105 N. Y. 97; *Hudson Tel. Co.* v. *Jersey City*, 49 N. J. L. 303; *Shreveport Traction Co.* v. *City of Shreveport*, 122 La. 1.)

The order should be affirmed, with costs.

CARDOZO, J. (dissenting). I dissent upon the ground that the charter of the city of New York differs essentially from the charter construed in *People ex rel. City of Olean* v. *Western N. Y. & Penn. Traction Co.* (214 N. Y. 526); that the grant of power to regulate the use of the streets is a delegation of the police power of the state government (*City of Buffalo* v. *Stevenson*, 207 N. Y. 258, 261, 263; *Dry Dock, E. B. & B. R. R. Co.* v. *Mayor, etc., of N. Y.*, 47 Hun, 221, 224); and that in the exercise of the police power, the city of New York has the right to compel a railroad company to remove its tracks from one part of a street to another, where the change is not made capriciously, but is necessary for the public safety (*Macon Consol. St. R. R. Co.* v. *City of Macon*, 112 Ga. 782, 784).

WILLARD BARTLETT, Ch. J., HISCOCK, CHASE and HOGAN, JJ., concur with COLLIN, J.; CARDOZO, J., reads dissenting memorandum, and SEABURY, J., concurs.

Order affirmed.