E. FOUGERA & COMPANY, INCORPORATED, Respondent,
    *v.* THE CITY OF NEW YORK et al., Appellants.

Public health — New York (city of) — Sanitary Code — ordi-
nance regulating sale of patent medicines — in what respects
valid — board of health exceeded its powers with reference to
effect of ordinance upon existing stores of medicine.

1. Sections 116 and 117 of the Sanitary Code adopted by the
board of health of the city of New York provide in substance that
there shall be no sale of patent or proprietary medicines in the city
of New York unless " the names of the ingredients of every such
medicine to which the therapeutic effects claimed are attributed,
and the names of all other ingredients except such as are physiologically
inactive, shall be registered in the department of health." Among
other things the ordinance provides that medicines are to be deemed
misbranded if the package or label contains " any statement, design,
or device, regarding the drug or its ingredients, or regarding its or
their action on diseased conditions, which statement, design, or device
shall be false or misleading in any particular." One who violates

the ordinance may be punished as for a misdemeanor, and is also liable to a penalty of fifty dollars to be recovered in a civil action. (New York City Charter, § 1222, L. 1901, ch. 466.) In a controversy submitted on an agreed statement of facts a judgment was rendered permanently enjoining the enforcement of the ordinance. *Held, first,* that the ordinance is not an arbitrary exercise of the power of government, that its purpose and effect are well within the limits of the police power. *Second,* that the ordinance does not compel the dealers in patent medicines to give evidence against themselves in violation of section 6 of article 1 of the Constitution of the state. *Third,* that the word " false " as used in the ordinance with respect to misleading statements of the curative action of the drug means willfully false or fraudulent and, therefore, does not permit punishment to be inflicted for mere error of opinion. *Fourth,* that the act is not an infringement of the exclusive power of Congress. (*Savage* v. *Jones,* 225 U. S. 501; *Dollar Co.* v. *Canadian C. & F. Co.,* 220 N. Y. 270, 280, followed.)

2. The ordinance does not except existing stores of merchandise in the hands of druggists or other dealers who do not know the ingredients and cannot state them. That is the situation of the respondent. The grant of power to the board of health (N. Y. City Charter, § 1172) was not intended to embrace the prohibition of all traffic in existing stores of merchandise and thereby work a practical forfeiture of property. On the ground, therefore, that the ordinance in its application to merchandise previously acquired fails to save the rights of dealers unable to comply with its requirements, the board of health is held to have exceeded the powers delegated to it by the charter.

*Fougera & Co.* v. *City of New York,* 178 App. Div. 824, affirmed.

(Argued June 5, 1918; decided October 15, 1918.)

APPEAL from a judgment of the Appellate Division of the Supreme Court in the first judicial department, entered August 21, 1917, in favor of plaintiff upon the submission of a controversy under section 1279 of the Code of Civil Procedure.

The nature of the controversy and the facts, so far as material, are stated in the opinion.

*William P. Burr, Corporation Counsel (Terence Farley and John F. O'Brien of counsel), for appellants.* If the provisions of the Sanitary Code, which are now the

subject of attack, can be justified as a valid exercise
of the police power, it is perfectly clear that they do
not deprive plaintiff, without due process of law, of any
of its property rights. (*State Board of Pharmacy* v.
*Matthews,* 197 N. Y. 353; *Savage* v. *Jones,* 225 U. S.
501; *Crescent Mfg. Co.* v. *Wilson,* 233 Fed. Rep. 282;
*People* v. *Henning Co.,* 260 Ill. 554; *State* v. *Snow,* 51
Iowa, 642; *State* v. *Holton,* 148 Iowa, 724; *State* v. *Sherod,*
80 Minn. 446; *People* v. *Windholz,* 92 App. Div. 569;
*People* v. *Abramson,* 137 App. Div. 549; *People* v. *Kibler,*
106. N. Y. 321; *People* v. *Girard,* 145 N. Y. 105; *People*
v. *Biesecker,* 169 N. Y. 53; *People* v. *Bowen,* 182 N. Y.
1.) The sections in question do not deprive plaintiff
of the equal protection of the laws. (*A. S. R. Co.* v.
*Louisiana,* 179 U. S. 89; *People* v. *St. John,* 178 N. Y.
617; 201 U. S. 633; *H. & M. · Co.* v. *Worst,* 207
U. S. 338; *State* v. *Donaldson,* 41 Minn. 74; *State* v.
*Sherod,* 80 Minn. 446; *Freadrich* v. *Nebraska,* 89 Neb.
343; *State* v. *Stevenson,* 109 N. C. 730; *Marmet* v.
*State,* 45 Ohio St. 63; *Wise* v. *Morgan,* 101 Tenn. 273;
*Dutton* v. *Knoxville,* 121 Tenn. 25.) Nor do the pro-
visions of the Sanitary Code conflict with those of the
Federal Food and Drugs Act of 1906. (*Savage* v. *Jones,*
225 U. S. 501.) As the provisions of the Sanitary Code
are admittedly police regulations and, manifestly, only
apply to proprietary or patent medicines which are
" held, offered for sale, sold, or given away, in the city
of New York," they are not in conflict with the commerce
clause of the Constitution. (*Savage* v. *Jones,* 225 U. S.
501; *McDermott* v. *Wisconsin,* 228 U. S. 115; *Plumley*
v. *Massachusetts,* 155 U. S. 461; *McDermott* v. *State,*
143 Wis. 18; *Crossman* v. *Lurman,* 171 N. Y. 329; 192
U. S. 189; *People* v. *Schmidt,* 218 N. Y. 256; *Powell*
v. *Pennsylvania,* 127 U. S. 678; *Capital City Dairy Co.* v.
*Ohio,* 183 U. S. 238; *Arbuckle* v. *Blackburn,* 191 U. S. 405;
*People* v. *Niagara Fruit Co.,* 75 App. Div. 11; 173 N. Y.

629.) Every police regulation, to a more or less extent, must necessarily depend upon the judgment or the " opinion " of some one. (*Jackson* v. *Massachusetts,* 197 U. S. 11; *Viemeister* v. *White,* 179 N. Y. 235; *Bunting* v. *Oregon,* 243 U. S. 426.) In determining whether the provisions of a law are within the purview of the police power, it is not necessary for the court to find that certain facts existed which justified the legislation. If such a state of facts can reasonably be presumed to exist, the court is bound to presume that they did exist and that the law was passed for that reason. (*Munn* v. *Illinois,* 94 U. S. 113; *Home Tel. Co.* v. *Los Angeles,* 211 U. S. 265; *Reinman* v. *Little Rock,* 237 U. S. 171; *People* v. *Charles Schweinler Press,* 214 N. Y. 395; *Klein* v. *Maravelas,* 219 N. Y. 383; *People* v. *Williams,* 189 N. Y. 131; *Hadacheck* v. *Sebastian,* 239 U. S. 394; *Noble State Bank* v. *Haskell,* 219 U. S. 104.)

*Charles M. Russell* for respondent. The disclosure ordinance attempts to destroy an existing property right and is void. (*Wynehamer* v. *People,* 13 N. Y. 378; *Matter of Townsend,* 39 N. Y. 171; *People ex rel. Appel* v. *Zimmerman,* 102 App. Div. 104; *People* v. *Orange County Road Construction Co.,* 175 N. Y. 84; *People ex rel. McPike* v. *Van De Carr,* 178 N. Y. 425; *People ex. rel. Isaacs* v. *Moran,* 206 N. Y. 690; 150 App. Div. 226; *Matter of Jacobs,* 98 N. Y. 98; *Slaughter House Cases,* 16 Wall. 36; *Yick Wo* v. *Hopkins,* 118 U. S. 356; *Allegyer* v. *Louisiana,* 165 U. S. 578.) The provisions of section 117 of the Sanitary Code, requiring registration with the department of health, or the labeling of the container with the ingredients contained therein, is in fatal conflict with section 6, article 1 of the Constitution of the state of New York, and section 1, article 14 of the Constitution of the United States, in denying to the plaintiff the right to sell its products, without first surrendering,

without due process of law or just compensation, its property to the board of health, including a sample of the product and the essential secrets of the formula, under which it is manufactured. (*Vance* v. *Vandercook*, 170 U. S. 455; *Scott* v. *Donald*, 165 U. S. 100; *People* v. *Campagnie Gen. Trans.*, 107 U. S. 62; 2 Story's Equity Juris. 952; *Champlin* v. *Stoddart*, 30 Hun, 300; *Taber* v. *Hoffman*, 118 N. Y. 30; *Harvey* v. *Nat. Drug Co.*, 75 App. Div. 103; *Gilman* v. *Tucker*, 128 N. Y. 203; *Moxie Nerve Co.* v. *Beach*, 35 Fed. Rep. 465.) The equal protection of the laws, as guaranteed by section 1, article 14 of the amendments to the Constitution of the United States, and section 6, article 1 of the Constitution of the state of New York, is denied to the plaintiff by the provisions of sections 116 and 117 of the Sanitary Code. (*People* v. *Ringe*, 197 N. Y. 143; *Hauser* v. *N. B. & M. Ins. Co.*, 206 N. Y. 455; *Yick Wo* v. *Hopkins*, 118 U. S. 373; *Soon Hing* v. *Crowley*, 113 U. S. 703; *Henderson* v. *Mayor of N. Y.*, 92 U. S. 259; *Magowan* v. *Illinois Trust & Savings Bank*, 170 U. S. 283; *People ex rel. Farrington* v. *Mensching*, 187 N. Y. 8; *Dobbins* v. *Los Angeles*, 195 U. S. 237; *Holden* v. *Hardy*, 167 U. S. 366; *Cotting* v. *K. C. Stock Yards Co.*, 183 U. S. 107.) Ordinances so indefinite as are sections 116 and 117 of the Sanitary Code, as to allow of an interpretation making harmless acts criminal, employing unnecessary means, inviting and allowing of maladministration, and placing unusual and unnecessary restrictions upon one lawful occupation in the interest of another, cannot be sustained as reasonable. (*Lawton* v. *Steele*, 152 U. S. 133; *Matter of Jacobs*, 98 N. Y. 98; *People* v. *Equitable Trust*, 96 N. Y. 388; *Fisher Co.* v. *Woods*, 187 N. Y. 90; *People ex rel. Wineburgh Adv. Co.* v. *Murphy*, 195 N. Y. 135; *Health Dept.* v. *Rector, etc.*, 145 N. Y. 32; *Covington Turnpike* v. *Sandford*, 164 U. S. 578; *South. Ry.* v. *Reid*, 222 U. S. 424; *Lochner* v.

*New York*, 193 U. S. 64.)   The provisions of sections 116 and 117 of the Sanitary Code, as amended, and the regulations provided therefor, are void, in that it appears from the terms thereof that they have no reasonable relation to the public health or public welfare.   (*Matter of Stubbs* v. *Adamson*, 220 N. Y. 459; *Vil. of Carthage* v. *Frederick*, 122 N. Y. 268; *People ex rel. Knobloch* v. *Warden*, 216 N. Y. 154; *Mayor, etc.*, v. *D. D., E. B. & B. R. R. Co.*, 133 N. Y. 104.)   A manufacturer of patent medicines is forced by the ordinances to become a witness against himself, as a prerequisite to selling his product in New York city, in contravention of section 6, article 1 of the Constitution of New York state. (*James* v. *Bowman*, 190 U. S. 127; *Employers' Liability Cases*, 207 U. S. 463; *Hauser* v. *N. B. & M. Ins. Co.*, 152 App. Div. 91; 206 N. Y. 455.)   A manufacturer, importer or dealer cannot legally be punished under sections 116 and 117 of the Sanitary Code for failing to disclose the therapeutic or physiological effects of an ingredient of a patent medicine or proprietary, which the department of health of the city of New York, or any of its officials, determines to be omitted, as the ordinance establishes no standard therefor; nor is there an established standard erected by custom or otherwise; nor any authority in the ordinance, or the board of health, to delegate to any board or individual the power to create or adopt such a standard.   Prosecutions may not, in the absence of a standard, be made solely upon opinion.   (*McChord* v. *L. & N. R. R. Co.*, 183 U. S. 498.)   Sections 116 and 117 of the Sanitary Code, as amended, are unauthorized, illegal and void in so far as the same purport to prohibit the " having " or " holding," within the city of New York, of proprietaries or patent medicines not complying with the specific regulations of the board of health and are in contravention of section 8 of article 1 of the Constitution of the United

States, vesting in Congress, only, the power to regulate commerce with foreign nations. (*Henderson* v. *Mayor, etc.*, 92 U. S. 273; *Wilcox S. P. Co.* v. *Green,* 72 N. Y. 20; *Krulder* v. *Edelson,* 47 N. Y. 36; *Cross* v. *O'Donnell,* 44 N. Y. 661; *M. W. Bliss Co.* v. *U. S. Incand. Gas Light Co.,* 149 N. Y. 300; *Gray* v. *Walton,* 107 N. Y. 254; *Hack* v. *Standard Oil Co.,* 100 N. Y. 134; *Gibbon* v. *Ogden,* 9 Wheat. 1; *Vance* v. *Vandercook Co.,* 170 U. S. 438; *McDermott* v. *Wisconsin,* 228 U. S. 115; *Corn Products Ref. Co.* v. *Weigle,* 221 Fed. Rep. 988; *Bowman* v. *C. & N. W. R. R. Co.,* 125 U. S. 465.) Sections 116 and 117 of the Sanitary Code, as amended, and the regulations adopted by the board of health therefor, are void in that they contravene section 8 of article 1 of the Constitution of the United States, vesting in Congress the power to regulate commerce among the several states. (*Henderson* v. *Mayor, etc.,* 92 U. S. 259; *Railroad Co.* v. *Husen,* 95 U. S. 472; *Bowman* v. *Chicago & N. W. R. R. Co.,* 125 U. S. 465; *Butler Bros. Shoe Co.* v. *U. S. Rubber Co.,* 156 Fed. Rep. 17; *Missouri, Kansas & Texas R. R.* v. *Haber,* 169 U. S. 613; *Vance* v. *Vandercook Co.,* 170 U. S. 438; *Adams Express Co.* v. *Kentucky,* 214 U. S. 218; *Southern Ry.* v. *Reid,* 222 U. S. 435; *Adams Express Co.* v. *New York,* 232 U. S. 14.) Congress having assumed jurisdiction over what shall constitute misbranding or adulteration, as to the label of a patent medicine, the attempt of sections 116 and 117 to do likewise as to the identical merchandise over which Congress has assumed jurisdiction, is in violation of the Constitution of the United States, giving to Congress exclusive jurisdiction over the subject-matter. (*McDermott* v. *Wisconsin,* 228 U. S. 155; *Southern Ry. Co.* v. *Reid,* 222 U. S. 435; *Oklahoma* v. *Kansas Gas Co.,* 221 U. S. 229; *Seven Cases* v. *United States,* 239 U. S. 510; *C. & C. Co.* v. *Yarnville Co.,* 237 U. S. 604; *Adams Express Co.* v. *Croninger,* 226 U. S. 506; *Erie R. R. Co.*

v. *N. Y.*, 236 U. S. 683; *Toledo, St. L. & W. R. R.* v. *Slavin*, 236 U. S. 454; *Charleston R. R. Co.* v. *Varnville Co.*, 237 U. S. 604; *Rast* v. *Van Deman & Lewis*, 240 U. S. 362.)

CARDOZO, J.  In a controversy submitted on an agreed statement of facts, judgment has been rendered permanently enjoining the enforcement of sections 116 and 117 of the Sanitary Code adopted by the board of health of the city of New York.

Those sections provide in substance that there shall be no sale of patent or proprietary medicines in the city of New York unless " the names of the ingredients of every such medicine to which the therapeutic effects claimed are attributed, and the names of all other ingredients except such as are physiologically inactive, shall be registered in the department of health." There is an exception where medicines are prescribed by a physician. The names of the ingredients when registered are to be " regarded as confidential and shall not be open to inspection by the public or by any persons other than the official custodian of such records in the department of health, such persons as may be authorized by law to inspect such records, and those duly authorized to prosecute or enforce the federal statutes, the laws of the state of New York, both criminal and civil, and the ordinances of the city of New York, but only for the purpose of such prosecution or enforcement." With the names there must be filed a copy of all advertising matter sold or distributed in connection with the medicine. Any proprietary or patent medicine shall be deemed to be misbranded if the names of its ingredients are omitted or mistated. Medicines are also to be deemed misbranded if the package or label contains " any statement, design, or device, regarding the drug or its ingredients, or regarding its or their action on diseased conditions,

which statement, design, or device shall be false or misleading in any particular." Misbranding may also result from other acts and omissions, not now important. In addition to misbranding, the ordinance prohibits and defines adulteration. One who violates the ordinance may be punished as for a misdemeanor, and is also liable to a penalty of $50 to be recovered in a civil action (Charter, New York City, sec. 1222).

The plaintiff is engaged in the importation and sale, both wholesale and retail, of proprietary and patent medicines. The names of many of the medicines are stated in the record. For some, the plaintiff is the exclusive importer and sole distributor in the United States. A large stock of drugs was on its shelves when the ordinance was passed. It does not know the names of the ingredients and cannot ascertain them. They are secrets closely guarded by the foreign manufacturers. In these circumstances, it insists that the ordinance is void. There have been two lines of attack. The ordinance is said in the first place to infringe rights secured to the plaintiff by the state and the federal Constitution. If not subject to that criticism, it is said to go beyond the scope of the powers which the legislature has delegated to the city's local officers.

Most of the objections to the ordinance, we reject as inadequate. For the moment, we put aside the consideration of its effect upon existing stores of merchandise. We deal with it at the outset in its relation to merchandise to be acquired in the future.

The argument is made that the ordinance is an abitrary exercise of the power of government. We do not think so. Its purpose and effect are well within the limits of the police power. The purpose is the preservation of the public health and safety (*Savage v. Jones*, 225 U. S. 501; *State v. Aslesin*, 50 Minn. 5, 8; *State Bd. of Pharmacy v. Matthews*, 197 N. Y. 353). The

form of protection is publicity. There must be disclosure of the truth to responsible officials who will prevent or punish the sale of fraudulent or noxious compounds. If that is not a legitimate public aim, we are at a loss to know where one may be found. It is not important that the ordinance fails to compel disclosure to all the world. Laws are not invalid because they fall short of the maximum of attainable efficiency. Disclosure to all the world, as in *Savage* v. *Jones* (*supra*), might make the protection more complete, but it would also make the hardship more severe. Something less, therefore, has been exacted. Disclosure is to be made to the health officers of the city, and to them only. If fraud or other wrong is discovered, then and then only exposure will result. " No man has a constitutional right to keep secret the composition of substances which he sells to the public as articles of food " (*State* v. *Aslesin*, *supra*). If that is true of food, it is even more plainly true of drugs. A danger exists, and the only question is whether the means of correction are appropriate. We cannot say that the means have no relation to the end. The public health is safeguarded by disclosure to public officers charged by law with its protection. We are not called upon to approve the wisdom of the ordinance. We stop when we satisfy ourselves that it has a reasonable relation to the end to be attained.

It is said that the effect of the ordinance is to compel the dealers in patent medicines to give evidence against themselves in violation of section 6 of article I of the Constitution of the state. The basis of that argument is a stipulation in the record " that the admitted object of defendants in the enactment of said revised Sanitary Code and regulations is to secure information on which to base prosecutions for violations of law, if in their opinion the facts disclosed in accordance therewith shall so warrant." We are not bound by stipulations in

respect of the purpose of legislation. Laws are not to be declared invalid upon the consent of parties. We must determine their purpose and tendency for ourselves. But if the stipulation were to be accepted as accurate, the result would not be changed. The sale of medicines is a business subject to governmental regulation. One who engages in it is not compelled by this ordinance to expose himself to punishment for any offense already committed. He is simply notified of the conditions upon which he may do business in the future. He makes his own choice. To such a situation, the privilege against self-accusation has no just application (*People* v. *Rosenheimer*, 209 N. Y. 115; *Ex parte Kneedler*, 243 Mo. 632, 641; *People* v. *Henwood*, 123 Mich. 317; Wigmore Ev. § 2264).

It is said again that prosecution may follow if any statement in respect of the curative action of the drug is false, and that to permit this is to inflict punishment for mere error of opinion (*Am. School of Magnetic Healing* v. *McAnnulty*, 187 U. S. 94). We have no doubt, however, that the word " false " as used in the ordinance means willfully false or fraudulent. If this construction is adopted, the objection vanishes (*Seven Cases* v. *U. S.*, 239 U. S. 510). Willful fault is generally, though not invariably, the determining mark of crime (Wharton Crim. L. [11th ed.] § 151; *Tenement House Dept. N. Y.* v. *McDevitt*, 215 N. Y. 160, 168). We will not assume that less was intended where the result of exacting less would be to render a law invalid. But the objection, in any event, is premature. The provision assailed is separable from those which say that a statement of the ingredients must be filed, and that the omission to file it will be punished. The defect, if it exists, does not reach the whole law.

Other objections are based upon a supposed conflict between the ordinance and the federal Constitution,

It is said that if applied to transactions of interstate or foreign commerce, the act is an infringement of the exclusive power of Congress. We think this objection is answered by *Savage* v. *Jones* (225 U. S. 501). The ordinance is an exercise of the police power of the state for the protection of the lives of its inhabitants (*Savage* v. *Jones, supra; McDermott* v. *Wisconsin,* 228 U. S. 115; *Crossman* v. *Lurman,* 192 U. S. 189; *Hall* v. *Geiger-Jones Co.,* 242 U. S. 539, 558; *People* v. *Schmidt,* 218 N. Y. 256). Such legislation may be permitted, though it affects incidentally interstate or foreign commerce, until Congress has disclosed a purpose to supersede the police power of the states, and to take exclusive possession of the field. It is said that Congress has disclosed that purpose by the adoption of the Food and Drugs Act (34 Stat. 768; 37 Stat. 416). To that objection, *Savage* v. *Jones* (*supra*) again supplies the answer. It was there held that there is nothing in the Food and Drugs Act which curtails the power of the states " to prevent imposition upon the public by making a reasonable and non-discriminatory provision for the disclosure of ingredients " (See also *Sligh* v. *Kirkwood,* 237 U. S. 52). It is true that there are some requirements of this ordinance which merely repeat prohibitions of the Food and Drug Act. That is true, for illustration, of the definition of adulterated products. If prosecution is attempted for the violation of those requirements as a result of any transaction of interstate or foreign commerce, the question will have to be determined whether the state can thus add to the penalties of the federal law. But such provisions, if we assume them to be invalid, are separable from the others (*Dollar Co.* v. *Canadian C. & F. Co.,* 220 N. Y. 270, 280; *Comm.* v. *Kimball,* 24 Pick. 362). The dominant scheme of the ordinance is disclosure of ingredients. That disclosure may be compelled, and the failure to make it punished, without

trespassing upon the field which has been occupied by Congress.

One other objection to the ordinance is yet to be considered. We think it points to a real defect, though one that amendment may correct. The ordinance does not except existing stores of merchandise in the hands of druggists or other dealers who do not know the ingredients and cannot state them. That is the plaintiff's plight. Before the adoption of the ordinance, it had imported large quantities of drugs; it does not know the ingredients; and the foreign manufacturer will not reveal them. In effect, therefore, an absolute prohibition is laid upon the sale of its existing stock. Between absolute prohibition and a condition impossible of fulfilment, the distinction may be nominal. A different case would be presented if the ingredients were known. The dealer then would have himself to blame if he refused to state them. A different case would also be presented if he had acquired the stock after the ordinance was in force. He would then have made the purchase with knowledge of the restriction. That is not the situation in which the Fougera Company finds itself. It is not at fault, and it has had no warning. It has bought drugs which from their long years of use may fairly be presumed to be legitimate articles of commerce. Without warning and without fault, its right of property has been forfeited. There must be many others in a like predicament. We do not need to say that there is no power even in the legislature to work this forfeiture. On the one side, stand such cases as *Wynehamer* v. *People* (13 N. Y. 378); *People ex rel. McPike* v. *Van De Carr* (178 N. Y. 425); *People ex rel. Isaacs* v. *Moran* (206 N. Y. 670); on the other, such cases as *Halter* v. *Nebraska* (205 U. S. 34, 40); *Rust* v. *Van Deman* (240 U. S. 342, 363); *Tanner* v. *Little* (240 U. S. 369); *L. & N. R. R. Co.* v. *Mottley* (219 U. S. 467); *Mugler* v. *Kansas* (123 U. S. 623). (See also

Freund on the Police Power, §§ 537, 538.) Where the line is to be drawn will have to be determined when the question arises. At present, the question is not here. What is before us now is not an act of the legislature. It is an ordinance of the department of health. The ordinance has been adopted under a general grant of power (Charter N. Y. City, § 1172) to publish "additional provisions for the security of life and health in the city of New York." We are satisfied that this grant of power was not intended to embrace the prohibition of all traffic in existing stores of merchandise (*Matter of Stubbe* v. *Adamson*, 220 N. Y. 459; *Fire Dept. of N. Y.* v. *Gilmour*, 149 N. Y. 453; *Haynes* v. *City of Cape May*, 50 N. J. L. 55; *Merrill* v. *Monticello*, 138 U. S. 673; *People ex rel. City of Olean* v. *Western N. Y. & P. Traction Co.*, 214 N. Y. 526, 528). It would be different if only noxious merchandise were affected. But the ordinance is not so limited. It strikes the good and the bad alike. The board of health is a subordinate agency of local government. Wide powers of regulation it doubtless has (Charter N. Y. City, *supra;* General City Law, L. 1913, ch. 247, section 20, subd. 13). But the power to regulate is not always equivalent to the power to destroy (*Hall* v. *Geiger-Jones Co.*, 242 U. S. 539; *Adams* v. *Tanner*, 244 U. S. 590, 594). Authority more specific must be found before a great mass of property, commonly reputed useful, may be declared contraband altogether, and excluded from the field of commerce.

The defect is so far reaching, it is so deeply wrought into the substance of the law, that there is no opportunity to sever the good from the bad (*U. S.* v. *Ju Toy*, 198 U. S. 253, 262, and cases cited; *Hatch* v. *Reardon*, 204 U. S. 152, 160; *Butts* v. *Merchants & M. Transp. Co.*, 230 U. S. 126, 136; *Ill. Cent. R. R. Co.* v. *McKendree*, 203 U. S. 514, 530; *Employers' Liability Cases*, 207 U. S. 463; *People ex rel. Isaacs* v. *Moran, supra*). To do that,

we should have to rewrite the ordinance. It does not classify or except or excuse (*People* v. *Beakes Dairy Co.*, 222 N. Y. 416, 432). It touches all who sell. It does not err in some minor incident or in its effect upon a few. Its fault is inherent in its scheme and extends to many. There must be few druggists who can state the composition of every patent medicine upon their shelves. Even in such circumstances, the courts wait before pronouncing a law void until some one within the range of the illegal provision has set their processes in motion. But when such a one has invoked their aid, they do not say that an inseparable law is void as to him and valid as to others. They strike it down altogether (*Hatch* v. *Reardon, supra*). If less is ever done, it is only where the result of severance is to leave the substance unimpaired (*Dollar Co.* v. *Canadian C. & F. Co., supra*). There can be no severance here that does not mutilate and destroy.

On the ground that the ordinance in its application to merchandise previously acquired fails to save the rights of dealers unable to comply with its requirements, we hold that the board of health has exceeded the powers delegated to it.

The judgment should be affirmed without costs to either party.

HISCOCK, Ch. J., CUDDEBACK and HOGAN, JJ., concur; CHASE, COLLIN and McLAUGHLIN, JJ., being of the opinion that the ordinance and regulations have a relation to the public health too remote to constitute them constitutionally valid, concur in the result only.

Judgment affirmed.